IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ARTHUR LOPEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-311 |
| | § | |
| DR. ERIN JONES, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arthur Lopez filed this civil action while incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ"). Invoking 42 U.S.C. § 1983, Lopez alleges that he was denied adequate medical care in violation of his constitutional rights. Lopez, who proceeds *pro se* and *in forma pauperis,* has filed an amended version of his complaint (Dkt. 7) and he has requested leave to file a second amended complaint (Dkt. 11). The Texas Attorney General's Office has provided briefing and administrative records relevant to Lopez's claims in a *Martinez* report (Dkt. 18),[1] which the Court has construed as a motion for summary judgment on behalf of the defendants (Dkt. 19). Lopez has filed a response (Dkt. 25) and he has also filed several other motions for miscellaneous relief, including a request for appointment of counsel (Dkts. 20, 22, 27, 28, 29, 34).

---

[1] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987). The report and relevant records have been filed under seal to protect the plaintiff's private medical information.

The Court will grant Lopez's motion for leave to file his second amended complaint (Dkt. 11-1), but his remaining motions will be denied. After reviewing all of the evidence submitted, the parties' briefing, and the applicable law, the Court concludes that the defendants are entitled to summary judgment and that this case must be **DISMISSED** for the reasons that follow.

I.  **BACKGROUND**

Lopez filed this lawsuit while confined by TDCJ at the Ramsey Unit in Rosharon, Texas (Dkt. 1 at p. 3).[2] The defendants are employed as health care providers by TDCJ at the Ramsey Unit or by the University of Texas Medical Branch ("UTMB") at the John Sealy Hospital in Galveston: (1) Dr. Erin Jones; (2) Physician's Assistant Erin Freeman; (3) Senior Practice Manager Rebecca Nolan; (4) Dr. Gianmarco Vizzeri; (5) Dr. Larry Leininger; (6) Nurse Practitioner Cathy Frayer-Herzog; (7) Dr. Merkley; and (8) UTMB (Dkt. 11-1 at pp. 4-6).

Lopez alleges that he was denied adequate treatment for a skin condition that was triggered on or about December 28, 2014, by asbestos abatement in his dormitory (Dkt. 11-1 at pp. 6-7). Lopez claims that he was not treated in the unit infirmary by Dr. Jones until January 5, 2015, and that he was not seen by a specialist until September 2015 (*Id.* at p. 7). In the meantime he was treated again at the unit infirmary by P.A. Freeman, who prescribed treatment that was "absolutely uncalled for" and caused an adverse reaction that resulted in "severe mental and physical trauma" (*Id.*).

---

[2] For purposes of identification all page numbers reference the pagination imprinted on each docket entry by the Court's electronic filing system, CM/ECF.

Lopez, who suffers from glaucoma, alleges further that his skin condition caused blindness in his right eye, which Dr. Vizzeri, Dr. Merkley, and Dr. Leininger failed to adequately treat (*Id*. at pp. 7-9). In addition, Lopez alleges that he also suffered a "severe foot injury" that was misdiagnosed by N.P. Frayer-Herzog as a mild case of arthritis (*Id*. at 9). Lopez claims that Frayer-Herzog treated him with Ibuprofen for eight months before finally referring him to an orthopedic specialist (*Id*.). Lopez seeks compensatory and punitive damages from all of the defendants under 42 U.S.C. § 1983 for the violation of his constitutional right to receive adequate medical care while in prison (*Id*. at 12).

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

Lopez has been released from prison and is no longer in custody (Dkt. 35). Because he filed this suit while incarcerated, the Court is required by the PLRA to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). An administrative report submitted by state officials pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (a "*Martinez* report"), is a tool to assist courts in making a determination of frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*,

3

122 F.3d 286, 292-93 (5th Cir. 1997); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff in this case proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "labels and conclusions' or a 'formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

B.  **Summary Judgment — Rule 56**

The Court has construed the *Martinez* report filed by the Attorney General's Office as a motion for summary judgment on behalf of the defendants (Dkt. 19). Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the movant meets this initial burden, the non-movant must

go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although the plaintiff in this case is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his or her burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016) (citing *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts . . . . *Pro se* litigants must properly . . . present summary judgment evidence") (quotation marks omitted)).

## III. DISCUSSION

### A. The Defendants are Entitled to Official Immunity

Lopez sues a state agency (UTMB) and several state employees (Dkt. 11-1 at pp. 4-6). Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency. *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002). As a state agency, UTMB is entitled to immunity from a suit for money damages under 42 U.S.C. § 1983. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). Eleventh Amendment immunity also bars a suit for money damages against state employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). To the extent that Lopez seeks monetary

damages from UTMB or any of the individual defendants in their official capacity as state employees, those claims must be dismissed as barred by the Eleventh Amendment.

### B. Lopez Was Not Denied Constitutionally Adequate Care

To succeed in stating a claim for inadequate medical care a prisoner must demonstrate "deliberate indifference" to a "serious medical need" that poses a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference in violation of the Eighth Amendment, a prisoner must show that the defendant was both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) subjectively drew an inference that such potential for harm existed. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). A showing of deliberate indifference to medical needs requires the prisoner to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted).

In response to Lopez's claims, the Attorney General's Office has provided an affidavit from Dr. Steven Bowers, along with medical records documenting treatment that he has received (Dkt. 18-1, at pp. 1-60). The records of treatment that Lopez

received for his skin condition, his vision, and his injured foot, which is summarized below, demonstrates that he was not denied constitutionally adequate medical care by any of the individual defendants.

### 1. Treatment for Skin Disorders

Lopez contends that Dr. Jones and P.A. Freeman failed to provide adequate treatment for a rash or "fungal reaction" that he developed on or about December 28, 2014, in response to asbestos abatement in his dormitory (Dkt. 11-1 at p. 7). Medical records show that Lopez was treated at the unit infirmary on January 5, 2015, where he complained that his skin was "very itchy" (Dkt. 18-1 at p. 14). On that occasion, Dr. Jones noted "multiple tiny patches of excoriated, erythematous skin" on Lopez's abdomen, thighs, an arms, and "tiny clear fluid filled blisters on [his] hands" (*Id*. at p. 15). She diagnosed eczema and prescribed an antibiotic (amoxicillin), Benadryl (diphenhydramine), and a topical skin lotion to treat the condition (*Id.* at pp. 15-16). She also scheduled Lopez for a follow-up appointment (*Id.*).

Lopez was treated at the unit infirmary again on February 6, 2015, where Dr. Jones observed that he had "erythematous splotches" on his arms and legs, "with evidence of clear blister formation, rupture an excoriation" (Dkt. 18-1, at p. 18). At that time, Dr. Jones believed he could have pemphigus, which is an autoimmune condition that affects the skin, but she did not want to start him on oral steroids without first doing some lab tests (*Id.*). She ordered a comprehensive metabolic panel and scheduled him for a follow-up appointment once the lab results were returned (*Id*. at 19).

Dr. Jones saw Lopez again on March 24, 2015, where she noted that he continued have "[m]ultiple pinpoint erythematous lesions with excoriation" on his arms, abdomen and legs, particularly around the waistband area and upper thighs (Dkt. 18-1 at p. 21). After reviewing the lab results, Dr. Jones was still unsure of the etiology or diagnosis, so she issued a referral to the dermatology specialty clinic at the UTMB Hospital in Galveston (*Id*. at pp. 4, 22).

Lopez was seen in the unit infirmary again on April 24, 2015, for symptoms of his skin rash, which he believed was psoriasis (Dkt. 18-1 at p. 25). During this examination, P.A. Freeman observed "pinpoint erythematous papules [in the] webspaces of his fingers and toes," along the waistband, a few on his penis, and excoriations on his upper and lower extremities (*Id*.). P.A. Freeman determined that he was suffering from scabies, which is a contagious skin disease caused by mites, in addition to eczema (*Id*.). The plan was to have Lopez treated under an Infectious Disease protocol for scabies and to provide kenalog injections for the eczematous rash (*Id.* at pp. 4, 25). After discussing the side effects of the kenalog shot, which Lopez indicated he was familiar with and had tolerated previously, Freeman started him on this regimen and scheduled him for a follow-up appointment at the infirmary (*Id*. at p. 22).

At Lopez's next infirmary appointment on May 28, 2015, Lopez reported that his rash had "drastically improved" following the kenalog injection and scabies treatment regimen prescribed by P.A. Freeman, although Lopez disagreed that he had scabies (Dkt. 18-1 at p. 28). Freeman observed "no rash on [Lopez's] upper chest, trunk, back, [or] arms," but he had some spots or "hyperpigmented macules" on his anterior thighs where

his rash used to be (*Id.*). After determining that Lopez's skin condition was resolved, his dermatology appointment was cancelled (*Id.* at p. 29).

The medical records presented in this case confirm that Lopez was not denied treatment for his skin condition. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991); *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where medical records document that the prisoner was not denied medical attention). To the extent that Lopez takes issue with treatment decisions, the Supreme Court has clarified that determinations about whether a certain form of treatment is indicated are "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. Although Lopez disagreed in particular with Freeman's determination that he had scabies, the Fifth Circuit has repeatedly held that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Lopez does not otherwise demonstrate that he was denied medical care for a skin condition with deliberate indifference and he does not raise a fact issue about whether Dr. Jones or P.A. Freeman violated his constitutional rights. Accordingly, Dr. Jones and P.A. Freeman are entitled to summary judgment on the claims against them.

### 2. Treatment for Vision Problems and Glaucoma

Lopez alleges that he was denied adequate medical care by Dr. Vizzeri, Dr. Merkley, and Dr. Leininger, who failed to treat him for glaucoma and vision problems

caused by his skin condition (Dkt. 11-1 at pp. 7-9). None of the available medical records reflect that Lopez's skin condition affected his face or his vision. The medical records do establish, however, that Lopez was treated regularly for "primary open-angle glaucoma" and other issues at the Ophthalmology specialty clinic at the UTMB Hospital in Galveston (Dkt. 18-1 at pp. 4, 31). During a visit on February 25, 2015, Lopez stated that he did not wish to continue keeping his eye appointments (*Id*. at p. 31). The physician who was treating Lopez on that occasion advised him that the risks of declining treatment, including pain, blindness, and potentially the removal of one or both eyes, but Lopez "insisted" on not being seen that day or anytime in the future (*Id.*). The physician advised Lopez that he would be happy to see him again in the future if he changed his mind (*Id.*).

Despite asking to stop his eye appointments, the records show that Lopez continued to receive medication and regular treatment for his vision (Dkt. 18-1 at pp. 4, 34-36, 38-40, 42-45, 47-50). On August 22, 2016, he was treated for allergic conjunctivitis (*Id.* at p. 35). During that appointment, he was offered eye surgery (*Id*.). Lopez declined (*Id.*). At an appointment on January 1, 2017, a decision was made to discontinue Brimonidine, which is a medication used to treat increased eye pressure caused by open-angle glaucoma, because Lopez was suffering significant side effects from the medication (*Id.* at pp. 5, 43). At his next visit on April 21, 2017, Lopez's intraocular pressure ("IOP"), an effect of glaucoma, was documented to be well controlled after discontinuing the Brimonidine (*Id.* at pp. 5, 48).

The medical records reflect that Lopez was not denied care for glaucoma or any other issue with his vision. *See McCord*, 910 F.2d at 1251. Lopez does not allege specific facts showing that he requested any particular treatment or that treatment was denied and he does not demonstrate that Dr. Vizzeri, Dr. Merkley, Dr. Leininger or any other provider denied him care for his vision problems with deliberate indifference. Accordingly, these defendants are entitled to summary judgment on the claims against them.

### 3. Lopez's Foot Injury

Lopez alleges that he was denied adequate medical care for a "severe foot injury," which N.P. Frayer-Herzog misdiagnosed as a mild case of arthritis (Dkt. 11-1 at p. 9). His primary complaint is that he was only treated with Ibuprofen for eight months before Frayer-Herzog finally referring him to an orthopedic specialist (*Id.*).

Medical records show that Frayer-Herzog treated Lopez for complaints of left foot pain on May 30, 2013 (Dkt. 18-1 at p. 52). Lopez, who had broken the second toe on his left foot in March 2013, complained of severe pain at the plantar ball of the foot and dorsal aspect of the arch whenever he put weight on it (*Id.* at p. 53). After noting no obvious deformity or swelling, Frayer-Herzog authorized another x-ray of Lopez's left foot and prescribed Ibuprofen (*Id.* at pp. 52-53). The x-ray disclosed no objective findings of injury other than "[m]ild osteoarthritis" in one of his joints (*Id.* at p. 55).

Frayer-Herzog saw Lopez again on September 24, 2013 (Dkt. 18-1 at p. 58). During that appointment, Lopez claimed that he hurt his foot in June climbing from the top bunk (*Id.*). He asked for some "lace up boots" because he believed that they were

better for pain than the athletic shoes he was wearing and he also asked for a cane (*Id.*). Frayer-Herzog reviewed the radiology report from Lopez's x-ray and examined his foot (*Id.*). She observed no swelling or deformity and no medical indication for alternative footwear or a cane (*Id.*). After noting that he had an appointment scheduled for the Orthopedic specialty clinic at the UTMB Hospital in October, Frayer-Herzog prescribed Ibuprofen, but no other treatment (*Id.*).

The State Attorney General's Office correctly notes that Lopez's claims against Frayer-Herzog pre-date his complaint by more than two years. In Texas, suits filed by prisoners under 42 U.S.C. § 1983 are subject to a two-year statute of limitations supplied by state law. *See Harris v. Hegman*, 198 F.3d 153, 157 (5th Cir. 1999); Tex. Civ. Prac. & Rem. Code § 16.003. This means that Lopez had two years from the time that his claims accrued to file a civil rights complaint concerning his allegations. *See Gonzalez v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). The record confirms that the objectionable treatment that Lopez received from Frayer-Herzog occurred in 2013. Because any claims stemming from that interaction accrued well over than two years before Lopez filed his complaint in this case on November 7, 2016, his claims against Frayer-Herzog are barred by the statute of limitations and must be dismissed. *See Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) (per curiam).

Alternatively, Lopez's contention that Frayer-Herzog misdiagnosed his foot condition does not appear to be supported by the medical records, which do not disclose any evidence of a severe foot injury overlooked by Frayer-Herzog. Lopez does not otherwise state an actionable claim against her under 42 U.S.C. § 1983. Even if a lapse

13

in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris*, 198 F.3d at 159 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Allegations of inadvertent failure to provide adequate medical care, or of a negligent diagnosis, simply fail to establish the requisite culpable state of mind. *See Domino*, 239 F.3d at 756 (noting that "an incorrect diagnosis does not amount to deliberate indifference"). Because Lopez does not demonstrate that Frayer-Herzog denied him care with deliberate indifference or that a constitutional violation occurred, she is entitled to summary judgment.

### 4. Claims Against Rebecca Nolan

The only other individual defendant named in the amended complaint is Senior Practice Manager Rebecca Nolan (Dkt. 11-1 at p. 4). Lopez does not allege facts showing that she had any personal involvement in any of the medical care that he received and he does not demonstrate that she was responsible for denying any treatment that he sought. Instead, he alleges that she "aided and abetted" the denial of adequate medical care by charging a $100 "health care service fee" for the follow-up appointment that he had with Dr. Jones on February 6, 2015 (*Id.* at p. 8).

As outlined above, Lopez has not alleged or shown that he was denied medical care by Dr. Jones or any other health care provider and he does not show that his constitutional rights were violated as a result of the health services fee assessed by Nolan. Absent a showing that Nolan was personally involved in conduct that violated the constitution, Lopez does not state an actionable claim against her under 42 U.S.C. § 1983. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see also Murphy v.*

*Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (explaining that a plaintiff bringing a § 1983 action must "specify the personal involvement of each defendant").

To the extent that Lopez contends that Nolan wrongfully assessed the fee,[3] claims concerning the wrongful taking of an inmate's personal property such as funds from his inmate trust account are precluded by the doctrine announced in *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984) (the "Parratt/Hudson" doctrine), because the Texas court system provides an adequate post-deprivation remedy for this type of claim. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir. 1986). For this additional reason, Lopez fails to state a claim against Nolan under 42 U.S.C. § 1983.

In conclusion, Lopez has not shown that he was denied adequate care with deliberate indifference or that a genuine issue of material fact remains for trial on any of his claims against the health-care providers named in his pleadings. For all of the foregoing reasons, the defendants are entitled to summary judgment and this case will be dismissed.

IV. **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1. The *Martinez* report, which has been construed as a motion for summary judgment on behalf of the defendants (Dkt. 18), is **GRANTED**.

---

[3] Texas prisoners with the means to do so are required to pay annually a $100 co-pay for medical services that they receive while in state prison. *See* Tex. Gov't Code § 501.063. Courts have consistently upheld the co-pay charged to Texas prisoners, rejecting arguments that it is unconstitutional. *See Morris v. Livingston*, 739 F.3d 740 745-52 (5th Cir. 2014); *McClure v. Thaler*, No. 5:11-cv-180, 2012 WL 2885767 (E.D. Tex. May 31, 2012); *Patrick v. Tenorio*, No. 3:12-cv-4690, 2013 WL 868318 (N.D. Tex. Feb. 4, 2013); *McClarty v. Livingston*, No. 6:16-cv-454, 2016 WL 8453639 (E.D. Tex. Nov. 16 2016).

2. The plaintiff's motion for leave to file a second amended complaint (Dkt. 11) is **GRANTED**; all of plaintiff's other motions (Dkts. 20, 22, 27, 28, 29, 34) are **DENIED**.

3. The complaint filed by Plaintiff Arthur Lopez is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties and to *amicus* counsel of record for the defendants.

SIGNED at Galveston, Texas, this 27th day of July, 2018.

_____
George C. Hanks Jr.
United States District Judge